# In the United States Court of Federal Claims

No. 14-494C
(Filed: August 24, 2015)

| | |
|---|---|
| MUHAMMAD TARIQ BAHA, ) | |
| ) | Motion to Dismiss; Lack of |
| ) | Jurisdiction; RCFC 12(b)(1); Failure to |
| Plaintiff, ) | State a Claim; RCFC 12(b)(6); |
| ) | Pleading Contractual Provisions; |
| v. ) | RCFC 9(k); Contract Disputes Act; |
| ) | Notice to Interested Parties; RCFC |
| THE UNITED STATES, ) | 14(b)(3); RCFC 12(b)(7) |
| ) | |
| Defendant. ) | |
| ) | |

*Mogeeb Weiss*, Weiss Law PC, Alameda, CA, for plaintiff.

*James Sweet*, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Franklin E. White, Jr.*, Assistant Director, for defendant.

**OPINION DENYING THE GOVERNMENT'S
RENEWED MOTION TO DISMISS**

**FIRESTONE**, *Judge*.

Pending before the court is the motion of defendant United States ("the government") to dismiss the amended complaint of plaintiff, Muhammad Tariq Baha ("Mr. Baha"), pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Rules of United States Court of Federal Claims ("RCFC"). Gov't's 2d Mot. to Dismiss, ECF No. 17 ("Gov't's Mot.").

The complaint alleges that, from August 2002 until March 2014, the United States Army occupied a property known as Jill Fab house in Kabul, Afghanistan that plaintiff

alleges belongs to him.  Mr. Baha alleges that the government did not pay him any rent

between September 2003 and September 2009, or between September 2012 and March

2014.  The plaintiff argues that pursuant to contracted agreement, the government owes

him $54,000 per year for rent owed for September 2003 to September 2009 and $120,000

per year for rent owed from September 2012 to March 2014.

The government argues that the claims for unpaid rent for the period between

September 2003 and September 2010 should be dismissed pursuant to RCFC 12(b)(6)

and RCFC 9(k) because the plaintiff has failed to provide a copy of the 2002 lease

agreement.  Instead, the plaintiff submitted an amendment to that agreement signed on

August 17, 2002, in which the government agreed to pay $54,000 per year for the term of

the 2002 lease.  The government also argues that, pursuant to RCFC 12(b)(1), the court

lacks jurisdiction over plaintiff's claim for rent allegedly owed for January, February, and

March of 2014 because the claim plaintiff submitted under the Contracts Disputes Act

("CDA"), 41 U.S.C. § 7103, only requested rent accrued through the end of 2013.[1]

Finally, the government argues that pursuant to RCFC 12(b)(7), the case should not

proceed because, Mr. Baha, has failed to join the other owners of the Jill Fab house. The

government argues that the Jill Fab is owned by several individuals, who, in addition to

Mr. Baha, inherited it from Mr. Baha's father.  According to the government, these

---

[1] The government initially claimed that plaintiff was barred from seeking rent allegedly owed after 2009 based upon a claim for payment that the plaintiff submitted to the contracting officer in January of 2010.  However, in his opposition to defendant's motion to dismiss, plaintiff attached a second claim that Mr. Baha had submitted to the contracting officer on January 19, 2014.  App'x to Pl.'s Opp. to Gov't's Mot. ("Pl.'s App'x") 1-2, ECF No. 18-1.

individuals are indispensable parties and that the case should be dismissed because they
were not joined.  In the alternative, the government requests, pursuant to RCFC 14(b),
that the court provide notice to these heirs, as interested parties, in order to give them an
opportunity to intervene.  The plaintiff argues that he alone owns the subject property
under Afghan law and he alone had the authority to lease the property and therefore other
heirs are not indispensable.  Pl.'s Opp. to Gov't's Mot. ("Pl.'s Opp."), ECF No. 18.

For the reasons set forth below, the government's motion to dismiss is **DENIED**.
However, because the court finds that individuals other than Mr. Baha potentially have an
interest in the property and the leases at issue, the court **GRANTS** the government's
motion to provide notice to the other heirs of the property.

I.      **BACKGROUND**

A.      **Facts**[2]

Mr. Baha alleges that he possesses a deed for a residential house in Kabul,
Afghanistan known as the Jill Fab house.  Am. Compl. ¶ 7.  Mr. Baha alleges that, on
August 10, 2002, he entered into Lease No. SWD-OEF-0027 ("27 Lease"), an agreement
to rent the Jill Fab house to the government.  Am. Compl. ¶ 5.  Mr. Baha states that he
"does not have a copy of this written Lease Agreement" and alleges that this is "because
Defendant refused to provide Plaintiff with a copy."  Id.  Shortly after the 27 Lease was

---

[2] The facts as stated are taken from the allegations in the plaintiff's complaint attached
documents, as well as the documents attached to the government's motion to dismiss and the
plaintiff's opposition.  At this time, the parties have not challenged the authenticity of any of
these documents.

signed, a dispute arose as to whether Mr. Baha's father, Ghuiam Bahawoudin,[3] or another person, Haji Jamil, owned the house. Am. Compl. Ex. 1. As a consequence, on August 17, 2002, the government entered into a supplement to the 27 Lease ("27 Lease Supplement"). The agreement was between the government and "Ghuiam Baoddin [son of] Niaz Mohammad, acting by and through his son Muhammad Tariq Baha." Am. Compl. Ex. 1 at 1. Under the 27 Lease Supplement, the government took possession of the house, but the parties agreed that the government would not make payment until an Afghan court determined legal ownership and title to the house. Id. Paragraph 3 of the 27 Lease Supplement, entitled "RENTAL" stated that "The Lessee will pay the Lessor rent at the rate of $54,000 (U.S. Dollars) for the term." Id. At the time 27 Lease Supplement was signed, Mr. Bahawoudin was deceased. App'x to Gov't's Mot. ("Gov't App'x") 15; Pl.'s Opp. 5.

Mr. Baha alleges that he successfully prevailed in the Afghanistan Supreme Court against all challenges to the title of the house in 2009. Am. Compl. ¶ 7; Gov't App'x 15-19. The Afghanistan Supreme Court decision found that Mr. Bahawouddin was the rightful owner of the property and that, since he was deceased, the property belonged to his heirs. Gov't App'x 15, 17-18. The Afghanistan Supreme Court decision also indicates that, in addition to Mr. Baha, the other heirs are Mr. Bahawouddin's widow, Kobra, and his other children: Mohammad Hamed, Mohammad Khaled, Qudsia, Fahima, Afifa, Fariha, and Tuba (collectively, "other potential heirs"). Gov't App'x 15.

---

[3] Mr. Baha's father is referred to variously as Mr. Baoddin or Mr. Bahawouddin. For consistency, this opinion refers to him as Mr. Bahawouddin.

The parties entered into a second lease agreement for the same property, Lease No. DACA-TAN-5-11-0032 ("32 Lease"), on August 8, 2011.  Gov't App'x 5-14.  The 32 Lease, signed by Mr. Baha, stated that the agreement was between the government and "the heirs of Bahawouddin, Son of Neyaz Mohammad Represented by Mohammad Tariq [Baha]."  Id. at 5.  The 32 Lease gave the government the right to the property from September 25, 2011 to September 24, 2012, with a right to renew for up to four years under the same terms.  Id.  The government agreed to pay an annual rent of $120,000.  Id.

Mr. Baha alleges that the government paid him rent from September 2009 through September 2012 at a rate of $120,000 per year for a total of $360,000.  Am. Compl. ¶ 6.  However, Mr. Baha alleges that the government stopped paying rent in September of 2012, but remained on the property until March of 2014.  Am. Compl. ¶ 8.  Mr. Baha also alleges that the government never paid the rent due between September 2003 and September 2010, while Mr. Baha was litigating the title issue.  Am. Compl. ¶¶ 1, 9.

Mr. Baha submitted two CDA claims, the first in January 2010 seeking rent and other damages accrued between 2002 and 2009 in the amount of $1,615,000, Gov't App'x 1-3, and the second in January of 2014 for rent and other damages accrued through December of 2013 in the amount of $2,109,000, Pl.'s App'x 1-2.

**B.     The Court's Order Regarding Plaintiff's Amended Complaint**

On June 9, 2014, Mr. Baha filed his initial complaint in this court.  Following a hearing on the government's first motion to dismiss, the court issued an order permitting Mr. Baha to amend his complaint and directing Mr. Baha to address three issues raised in the government's initial motion to dismiss.  Jan. 16, 2015 Order at 1 ("Order"), ECF No.

13.  First, Mr. Baha was directed to "only make claims based on documents that can be located and attached to the amended complaint."  Id.  Second, Mr. Baha was directed to show "that he has satisfied the requirements for a CDA claim" by submitting a claim regarding rent allegedly due between September 2012 and March 2014, "or consider withdrawing the claim until he can meet the CDA's jurisdictional requirements."  Id.  Third, Mr. Baha was directed to allege whether or not he was the sole heir to the Jill Fab house.  Id. at 2.

Mr. Baha filed an amended complaint on March 10, 2015.  The government renewed its motion to dismiss on May 15, 2015.  The court finds that oral argument on the government's renewed motion is not necessary.

## II.    STANDARD OF REVIEW

Under the Tucker Act, an action may be maintained in this court only if it is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  A plaintiff seeking to litigate in the Court of Federal Claims "bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." Hopi Tribe v. United States, 782 F.3d 662, 666 (Fed. Cir. 2015) (quoting M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010)).  "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations

omitted).  If a motion to dismiss for lack of subject matter jurisdiction challenges the

jurisdictional facts alleged in the complaint, the court may consider relevant evidence

outside the complaint in order to determine whether it has jurisdiction.  Banks v. United

States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force

Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988)).

A complaint must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief[.]"  RCFC 8(a)(2).  A complaint that offers "labels and

conclusions," or "a formulaic recitation of the elements of a cause of action will not do."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555 (2007)).  Nor does it suffice to tender "naked assertion[s] devoid of

further factual enhancement."  Id. (quoting Twombly, 550 U.S. at 557). Thus, the factual

allegations (as opposed to the legal conclusions) must be sufficient to "nudge" a claim

"across the line from conceivable to plausible."  Id. at 683 (quoting Twombly, 550 U.S.

at 570).

## III.   DISCUSSION

### A.      Plaintiff's Complaint Satisfies RCFC 9(k) and the Court's Order

The government argues that this court does not possess jurisdiction to consider

Mr. Baha's claim for rent between September 2003 and September 2010 because he

failed to attach a copy of the 27 Lease, and has failed to identify the substantive

provisions of the lease upon which he relies.  Therefore, the government argues, plaintiff

does not meet the requirement of RCFC 9(k).  This rule sets the pleading requirements

for bringing a claim founded on a contract or treaty in this court, providing that:

> In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies. In lieu of a description, the party may annex to the complaint a copy of the contract or treaty, indicating the relevant provisions.

RCFC 9(k).[4]  The government also argues that plaintiff has not satisfied this court's prior

Order stating that plaintiff "shall only make claims based on documents that can be

located and attached to the amended complaint."  Gov't's Mot. 6 (quoting Order at 1).

The court disagrees with the government and finds that Mr. Baha has satisfied

both RCFC 9(k) and this court's prior order.  In his amended complaint, Mr. Baha admits

that he "does not have a copy of [the original 27] Lease Agreement[.]"  Am. Compl. ¶ 5.

He did, however, attach a copy of the 27 Lease Supplement, which he argues proves both

that a contract existed and that under its terms he was entitled to a $54,000 annual rent for

"the term" of the Lease.  The government argues that his claim based upon the 27 Lease

must be dismissed because the 27 Lease Supplement does not establish that the

government would owe $54,000 annually for rent, and instead "only provides a payment

of $54,000 for 'the term,' not per year, as Mr. Baha asserts." Gov't's Mot. 6.

The court agrees with the plaintiff and finds that 27 Lease Supplement attached to

plaintiff's amended complaint is sufficient to satisfy the terms of the court's prior order

as well as RCFC 9(k).  Plaintiff has alleged that the 27 Lease required the government to

pay him $54,000 per year in rent, an allegation supported by the lease supplement, which

is sufficient to satisfy RCFC 9(k).  Given that the government does not refute plaintiff's

---

[4] Satisfaction of RCFC 9(k) is a jurisdictional requirement.  See Gonzalez–McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 715 (2010).

assertion that it has a copy of the 27 Lease, the court finds that attaching the 27 Lease

Supplement to plaintiff's complaint satisfies the court's order.

### B.      Plaintiff Has Satisfied the CDA's Claim Requirement

The government argues that, under the CDA, the court lacks jurisdiction over

plaintiff's claim for unpaid rent for January, February, and March of 2014 because

plaintiff only demanded rent due through December 2013 in the claim that he submitted

on January 19, 2014.  Under the CDA, "[e]ach claim by a contractor against the Federal

Government relating to a contract shall be submitted to the contracting officer for a

decision." 41 U.S.C. § 7103(a)(1).  A claim is "a written demand or written assertion by

one of the contracting parties seeking, as a matter of right, the payment of money in a

sum certain, the adjustment or interpretation of contract terms, or other relief arising

under or relating to this contract." 48 C.F.R. § 52.233-1(c).  Because the claim

requirement is jurisdictional, the failure to submit a valid claim that conforms with the

CDA's requirements must result in the dismissal of the complaint.  Northrop Grumman

Computing Sys., Inc. v. United States, 709 F.3d 1107, 1112 (Fed. Cir. 2013) ("If a

purported claim is found to be insufficient for any reason, the insufficiency is fatal to

jurisdiction under the CDA." (citing Sharman Co. v. United States, 2 F.3d 1564, 1568

(Fed. Cir. 1993)).

The court finds that plaintiff has established jurisdiction under the CDA for the

entire amount he seeks in his amended complaint, including the first three months of

2014.[5] In order to establish jurisdiction in this court, the prerequisite claim must include

"an adequate statement of the amount sought and an adequate statement of the basis of

the request." K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1005 (Fed. Cir.

2015) (citing Joseph Morton Co. v. United States, 757 F.2d 1273, 1281 (Fed. Cir. 1985)).

However, the requirement that a claim include a statement of the amount sought does not

preclude the court from taking jurisdiction even if there are "adjustments in amounts

'based upon matters developed in litigation.'" Id. (quoting Tecom, Inc. v. United States,

732 F.2d 935, 937-38 (Fed. Cir. 1984)). In Modeer v. United States, the court found that

it had jurisdiction over a claim for which damages had continued to accrue after the claim

was submitted to the contracting officer. 68 Fed. Cl. 131, 137 (2005) aff'd, 183 F. App'x

975 (Fed. Cir. 2006). The court reasoned that "if the dollar value of a claim increases

based on new information available only after the claim was submitted to the contracting

officer," the plaintiff was not required to resubmit the claim so long as the amount that

the plaintiff claims in litigation "arises from the same operative facts as the original claim

and claims the same categories of relief." Id. (citing Cerberonics, Inc. v. United States,

13 Cl. Ct. 415, 418 (1987)).

Plaintiff's 2013 claim to the contracting officer stated that he was seeking

$10,000 per month in unpaid rent pursuant with his contract with the government. Pl.'s

App'x 2. In the present litigation, plaintiff seeks the same monthly rent for three

additional months under the same theory. See Am. Compl. ¶ 18. Therefore, the court

---

[5] Because this challenge is jurisdictional, the court is permitted to look at documents outside of
the pleadings. Banks, 741 F.3d at 1277.

"will have to review the same or related evidence" that was before the contracting officer

in this litigation.  Kinetic Builder's Inc. v. Peters, 226 F.3d 1307, 1312 (Fed. Cir. 2000)

(citing Placeway Constr. Corp. v. United States, 920 F.2d 903, 907 (Fed. Cir. 1990)).

The claim before the contracting officer and the complaint before this court therefore

involve the "same operative facts," id., and the dollar value of the claim only increased

based on events which occurred "only after the claim was submitted to the contracting

officer," Modeer, 68 Fed. Cl. at 137.  Therefore, the claim in plaintiff's complaint is the

same as the one he presented to the contracting officer.  Conseqently, the government's

motion to dismiss plaintiff's claim for rent allegedly owed for January, February, and

March of 2014 is denied.

>    **C.    Mr. Baha is a Real Party in Interest, but Other Interested Parties Must
>            be Notified**

The government argues Mr. Baha lacks capacity to prosecute this case because

Mr. Bahawouddin's heirs are the real party in interest, not Mr. Baha.  Under RCFC

17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest."  RCFC

17(a).  The government argues that the other heirs, who are identified in the Afghanistan

Supreme Court decision as Mr. Baha's siblings and his father's wife, must be joined to

this litigation as indispensable parties under RCFC 19(a).  In the alternative, the

government asks the court to provide notice to the other heirs under RCFC 14(b), and has

provided the court with their contact information.  According to the government, Mr.

Baha's siblings have contacted the government and expressed an interest in collecting the

rent on the property.

The court finds that, as one of Mr. Bahawouddin's heirs, Mr. Baha is one of the real parties in interest to this case.[6]  The 27 Lease Supplement is "between Ghuiam Bawoddin [son of] Niaz Mohammad, acting by and through his son Muhammad Tariq Baha," and the Government.  Am. Compl. Ex. 1 at 1.  The 32 Lease is between "the heirs of Bahawouddin, Son of Neyaz Mohammad Represented by Mohammad Tariq [Baha]" and the Government.  Gov't App'x. 5. The Afghanistan Supreme Court decision—upon which Mr. Baha relies to trigger the rent obligation—indicates that the owners of the subject property are Mr. Bahawouddin's heirs including Mr. Baha, his mother, his two brothers, and his five sisters.  Gov't App'x 15, 17-18.  In addition to having an interest in the property itself, Mr. Bahaouddin's other heirs may have an interest in the proceeds of the leases at issue in this case.  The 32 Lease in particular states that the Lessor includes the "heirs of Bahaouddin," Gov't App'x 5, using the plural to indicate that Mr. Baha was only one of several heirs intended to benefit from the proceeds of the lease.

Because Mr. Bahaouddin's other children and his widow may have an interest in the outcome of this litigation, the court orders that they must be given notice under RCFC 14(b).  See RCFC 14(b)(1) ("The court, on motion or on its own, may notify any person . . . who is alleged to have an interest in the subject matter of the suit.").  In an attempt to

---

[6] Mr. Baha argues he may bring this case without joining the other heirs under RCFC 17(a)(1)(F), which states that "a party with whom or in whose name a contract has been made for another's benefit" is permitted to "sue in [his] own name[] without joining the person for whose benefit the action is brought." RCFC 17(a)(1)(F).  However, there is nothing in Mr. Baha's amended complaint, which makes no mention of anyone with an interest in the property other than himself, indicating that he he is bringing this suit on the other heirs' behalf.  The court therefore finds that RCFC 17(a)(1)(F) is inapplicable.

show that he may prosecute this case on his own, Mr. Baha has provided a declaration

from Rona Kabiri, an attorney licensed to practice law in Afghanistan.  Pl.'s App'x 25-

28.  Ms. Kabiri states that under Afghan law, plaintiff "has complete possessory right

over the property" and that plaintiff's siblings "cannot maintain any action against Baha

in an Afghan court for right to the property because they have never identified themselves

as the issue of the deceased."  Id. at 11 (citing Afghan Civil Code Art. 11, 499).  The

court does not have sufficient information at this time to determine whether Mr. Baha is

correct regarding the laws of Afghanistan.  However, the court finds that under RCFC

14(b), the other heirs have at least enough of an alleged interest in the subject of the

litigation that they must be given notice and an opportunity to assert any potential claims.

Therefore, for the reasons stated above, the court finds that the below-identified

heirs have an interest in the property that is subject to the litigation and may be entitled to

payment under the 32 Lease and/or the 27 Lease.[7]  As such, notice shall be provided to

the individuals identified below:

Qudsia Badghisy
In care of Yegana Badghisy
502 Patterson View SW
Calgary, Alberta T3H3J9
CANADA
Tel: (403) 479-9050

Fahima Ahrary
Ascherring 11
21035 Hamburg,
GERMANY
Tel: 01149407355346
Famihab@hotmail.de

Fariha Samadzada
5838 Montevino Dr.
San Jose, CA 95123
Tel: (408) 229-9785

Mohammad Hamid Baha
47 Kincora View NW
Calgary, Alberta T3R1M4
CANADA

---

[7] At this time, the court defers ruling on the government's contention that the other heirs are necessary parties under RCFC 19(b).

massood_sam@sbcglobal.net                  Tel: (403) 247-5734

Afifa Baha                                 Tooba Baha
28863 Bay Heights Rd.                       4525 Riding Club Ct.
Hayward, CA 94542                          Hayward, CA 94542
Tel: (510) 397-2288                        Tel: (510) 583-0157
Cell: (510) 461-7005                       Cell phone: 510-676-2746
zubeen_2@yahoo.com                         Tbaha11@hotmail.com

Mohammad Khalid Baha                       Kobra Baha Kakar
661 Logan Lane                             4525 Riding Club Ct.
Danville, CA 94526                         Hayward, CA 94542
avgan@sbcglobal.net

## IV.   CONCLUSION

For the reasons stated above, the government's motion to dismiss is **DENIED**.

The government's motion to require notice to the other potential heirs is **GRANTED**.

The Clerk is directed to deliver notice to the government, as the moving party, for service

on the above-named persons.  RCFC 14(b)(4)(A).  Pursuant to RCFC 14(b)(4)(B), the

government shall serve the notice, together with the pleadings filed in this case, by

registered or certified mail.  The above-identified persons shall have 42 days after notice

is issued to file an appropriate pleading.  RCFC 14(c)(2).  The case will remain stayed for

a period of 60 days to allow for notices to be issued and for the persons identified to file

pleadings.  Responses to those pleadings shall be in accordance with the court's rules.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge