# In the United States Court of Federal Claims

No. 14-494C
(Filed: August 28, 2019)

| | | |
|---|---|---|
| MUHAMMAD TARIQ BAHA, | ) ) ) | |
| Plaintiff, | ) ) | Partial Summary Judgment; Rule 56; Release; Contract Interpretation; |
| v. | ) ) | Subject Matter Jurisdiction; Implied-in-Law Contract; Equitable Estoppel; |
| THE UNITED STATES, | ) ) | Stay. |
| Defendant. | ) ) ) ) | |

*Roia Shefayee*, Weiss Law PC, Alameda, CA, for plaintiff.

*Andrew W. Lamb*, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Franklin E. White, Jr.*, Assistant Director, for defendant. *Major Collin P. Evans*, General Litigation Branch, U.S. Army Legal Services Agency, Washington, DC, of counsel.

**OPINION GRANTING PARTIAL SUMMARY JUDGMENT AND STAY**

**FIRESTONE**, *Senior Judge*.

Pending before the court are the parties' cross-motions for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") and the defendant's (the "government") motion for joinder of parties under RCFC 19(a) or, in the alternative, for dismissal under RCFC 19(b) or for a stay. These motions are preceded by a long and protracted procedural history that bears repeating here.

The plaintiff ("Mr. Baha") filed his first complaint in this court in June 2014. Compl. (ECF No. 1). In September 2014, the government filed a motion to dismiss Mr. Baha's complaint, or in the alternative, to require that Mr. Baha amend his complaint on the ground that it did not comport with the Contract Disputes Act, 41 U.S.C. §§ 7101-09 ("CDA"). (ECF No. 9). Following briefing on this issue, the court ordered Mr. Baha to file an amended complaint, Order (ECF No. 13), which he filed in March 2015, seeking $504,000 in unpaid rent arising from leases which the government entered in 2002 ("27-Lease") and 2011 ("32-Lease") regarding a residential property in Kabul, Afghanistan. Am. Compl. ¶ 12 (ECF No. 14).

In May 2015, the government filed a new motion to dismiss or to provide notice to interested parties. Def.'s Mot. to Dismiss (ECF No. 17). In this motion, the government argued that the court lacked jurisdiction over any claim for "rent after September 2009 because [Mr. Baha] failed to submit a certified claim" to the contracting officer. *Id.* at 6. The government also argued that Mr. Baha had other relatives (the "Baha Family") with a potential claim to the rental payments. *Id.* at 12. In August 2015, the court denied the government's motion to dismiss and ordered that the Baha Family be sent notice of the litigation. *Baha v. United States*, 123 Fed. Cl. 1 (2015).

In November 2015, after litigation notices were sent to the Baha Family members, the Baha Family filed their own complaint. *See* Compl., No. 15-1349C (ECF No. 1). However, the Baha Family had not yet filed a certified claim with the contracting officer. The Baha Family's case was consolidated with the present case in January 2016. The government filed answers in both cases in May 2017. (ECF Nos. 43-44).

In September 2017, the government provided notice in a joint status report that it intended to seek dismissal of both cases. *See* Joint Status Report at 1 (ECF No. 51). After considering the government's motion to dismiss, on September 11, 2018, the court found that Mr. Baha's claim under the CDA contained a defective, but correctable, certification and accordingly remanded Mr. Baha's claim to the United States Army Corps of Engineers (the "United States Army"), Afghanistan Engineer District, Real Estate Office for correction and consideration. *See* Order at 10 (ECF No. 79). In that same order, the court unconsolidated the Baha Family's case from the current case and dismissed their complaint for lack of jurisdiction for failure to file a CDA claim with the contracting officer. *Id.*

Since the court's September 11, 2018 order, both Mr. Baha and the Baha Family have filed claims with the United States Army (on October 11, 2018 and August 30, 2018, respectively), which were denied on December 12, 2018. *See* Def.'s App. at 45-67 (ECF No. 90-1). The contracting officer denied Mr. Baha's claim because his documentation regarding a deed to the subject property presented irregularities and because the Baha Family's assertion of property rights conflicted with his assertion of sole ownership. *Id.* at 64-66. The Baha Family submitted two separate claims, one arising from the 27-Lease and another arising from the 32-Lease. *Id.* at 45-54. The contracting officer denied their first claim regarding the 27-Lease because, among other reasons, it accrued approximately nine years before the claim was filed, and it was therefore time-barred by the six-year statute of limitations established by 41 U.S.C. § 7103(a)(4) and Federal Acquisition Regulation 33.206(a). Def.'s App. at 59-61. The contracting officer

also denied the second claim regarding the 32-Lease because, inter alia, the Baha Family's assertion of property interests conflicted with Mr. Baha's assertion of sole ownership. *Id.* at 61-62.

The parties subsequently filed a joint status report on March 11, 2019, (ECF No. 83), and the court issued a scheduling order for cross-motions and briefing on summary judgment, (ECF No. 86). Mr. Baha filed his motion for summary judgment on April 15, 2019. (ECF No. 87). The government filed its cross-motion for partial summary judgment and for joinder of parties or dismissal or a stay on May 17, 2019. (ECF No. 90).

Mr. Baha asserts that he is entitled to summary judgment for his claims for unpaid rent arising out of the 27-Lease and 32-Lease because he is a party to both leases and was acting as an agent for his family when he signed the 32-Lease. Mr. Baha claims he is entitled to payment of rent (1) from September 2003 to September 2009 at the rate of $54,000 per year, for a total of $324,000, and (2) from September 2012 to March 2014 at the rate of $10,000 per month, for a total of $180,000 – for a combined total of $504,000.

In its cross-motion for partial summary judgment, the government asserts that Mr. Baha's claim arising from the 27-Lease is barred for various reasons, including the release Mr. Baha signed as part of the 32-Lease ("Release"). The Release states the Lessor agrees to "release, acquit, and forever discharge" the government, as Lessee, from "all . . . liability and claims; past, present and future, arising from the occupancy, use, and alteration" of the subject property. Def.'s App. at 17. As for the 32-Lease, the government asserts that the Baha Family may still bring claims arising out of that lease and thus the Baha Family must be joined under RCFC 19(a) or, alternatively, that the

case should be dismissed or stayed until the statute of limitations on the Baha Family's claims expire. For the reasons set forth below, the court grants the government's motion for partial summary judgment and denies Mr. Baha's motion for summary judgment regarding Mr. Baha's claim under the 27-Lease and stays consideration of his claim under the 32-Lease until December 13, 2019.

I.   **UNDISPUTED FACTS**

The undisputed facts, relevant to the cross-motions for summary judgment, are as follows. On August 10, 2002, the government entered into lease No. SWD-OEF-0027 ("27-Lease") for a residential property located in Kabul, Afghanistan ("the Premises"). Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Mot.") at 2; Def.'s Cross-Mot. at 3. Although neither party has been able to supply a copy of the 27-Lease, the government recognized the existence of this lease when the government and Mr. Baha signed a "SUPPLEMENTAL AGREEMENT . . . FOR PRIVATELY OWNED PROPERTY BETWEEN GHUIAM BAWODDIN S/O NIAZ MOHMMAD (Acting by and through his son MUHAMMAD TARIQ BAHA[)] AND THE UNITED STATES OF AMERICA" ("the Lease Supplement") on August 17, 2002. Pl.'s Mot. at 2-3; Def.'s Cross-Mot. at 3-4; Def.'s App. at 1. The Lease Supplement identifies Ghiuam Bawoddin,[1] acting by and through his son Muhammad Tariq Baha (Mr. Baha), as the lessor and the United States Army as the lessee. *Id.* Ghiuam Bawoddin, however, had been dead for many years. Def.'s Cross-Mot. at 3. The Lease Supplement states in part,

---

[1] Mr. Baha's father is alternately referred to as Mr. Bawoddin or Mr. Bahawouddin. For consistency, this opinion refers to him as Mr. Bawoddin.

"payment under the terms of the lease was not made to consummate the lease because of a challenge to the title of the Lessor." Def.'s App. at 1; *see also* Pl.'s Mot. at 2-3; Def.'s Cross-Mot. at 3-4. It goes on to state, "it is the desire of the parties that the Lessee take immediate possession of the property pursuant to the terms of the lease, but to delay payment of rental until the Lessor's ownership is determined by the Kabul Court." Def.'s App. at 1. It also specifies $54,000 as the rent for the lease term. *Id.* This document is signed by Mr. Baha and George B. Hardie, on behalf of the United States Army. *Id.* at 2. In a document dated August 20, 2002, Kubra Baha, Qudsea Bagdghisi, Fahima, Afifa Baha, Fariha Baha Samad Zada, Hamed Baha, Khaled Baha, and Tooba Baha (collectively the Baha Family), authorized Mr. Baha to act on their behalf to rent the Premises. *Id.* at 3; *see also* Def.'s Cross-Mot. at 4.

In 2009, following disputes regarding the ownership of the Premises with a third party, the Afghanistan Supreme Court identified Mr. Baha and the Baha Family members as Mr. Bawoddin's heirs and the rightful owners of the subject property. Pl.'s Mot. at 3; Def.'s Cross-Mot. at 5; Def.'s App. at 7-11.

On August 8, 2011, the heirs of Mr. Bawoddin, represented by Mr. Baha, and the United States Army entered into lease No. DACA-TAN-5-11-0032 ("32-Lease"). Pl.'s Mot. at 3; Def.'s Cross-Mot. at 6; Def.'s App. at 15. The annual rent in the 32-Lease was $120,000, more than twice that of the 27-Lease. Pl.'s Mot. at 3; Def.'s Cross-Mot. at 6; Def.'s App. at 16. The 32-Lease also contains the Release which states:

> The Parties mutually agree, that the Lessor does hereby release, acquit, and forever discharge the Lessee from any and all manner of actions, liability, and claims for any reason whatsoever; past, present, or future, arising from

> the occupancy, use, and alteration of the Premises, and for any other matters related thereto, and the Lessor agrees to indemnify, hold harmless, and defend, at Lessor's expense, the Lessee from and against any judicial process, including, but not limited to, demands and liabilities; past, present, and future, arising from the use, occupancy, and alteration of the Premises.

Def.'s App. at 17. The 32-Lease was signed by Mr. Baha on behalf of "the heirs of [Bawoddin], son of Neyaz Mohammad represented by Mohammad Tariq." *Id.* at 23. Ilse Merryman signed on behalf of the United States Army. *Id.*

## II.     LEGAL STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine" dispute is one that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. "A party opposing a properly supported motion for summary judgment may not rest upon mere allegation . . ., but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. Summary judgment is also appropriate where the only issues to be decided are issues of law. *See Huskey v. Trujillo*, 302 F.3d 1307, 1310 (Fed. Cir. 2002). Contract interpretation is generally amenable to summary judgment; whether a provision of a contract is ambiguous is a question of law. *Premier Office Complex of Parma, LLC v. United States*, 916 F.3d 1006, 1011 (Fed. Cir. 2019).

### III. DISCUSSION

#### A.     The Release's Plain Language Bars Mr. Baha's 27-Lease Claim

As discussed above, the government asserts that the plain language of the Release contained in the 32-Lease bars Mr. Baha's 27-Lease claim. Def.'s Cross-Mot. at 18. Specifically, the government contends that by agreeing to "release, acquit, and forever discharge" the United States Army as Lessor from "any and all manner of actions, liability, and claims for any reason whatsoever; past, present, or future, arising from the occupancy, use, and alteration of the Premises, and for any other matters related thereto," Mr. Baha is barred from asserting a claim for rent during the period of the 27-Lease. *Id.* at 18-19. Mr. Baha argues that the doctrine of equitable estoppel precludes applying the Release to the government's rent obligation under the 27-Lease and that "[s]uch a broad reading of the 32-Lease waiver of liability clause is contrary to equity and good conscience." Pl.'s Mot. at 10-11; *see also* Pl.'s Opp. & Reply at 2.

The court agrees with the government and finds that the Release unambiguously releases the government from any unpaid rent obligations arising under the 27-Lease. "A release is a contract whereby a party abandons a claim or relinquishes a right that could be asserted against another." *Holland v. United States*, 621 F.3d 1366, 1377 (Fed. Cir. 2010) (citations omitted). A release is interpreted like any other contract provision, *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009), and the court's interpretation begins with whether the release's plain language bars the asserted claim, *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). If the

provisions of a release are "clear and unambiguous, they must be given their plain and ordinary meaning." *Bell*, 570 F.3d at 1341 (citations omitted).

Here, the 32-Lease releases the United States Army from "all manner of actions, liability, and claims," including "past" actions, liability, and claims, "arising from the occupancy, use, and alteration of the Premises, and for any other matters related thereto." Def.'s App. at 17. The United States Army's rent obligation for its occupancy of the subject property under the 27-Lease "aris[es] from" or is a matter "related" to "the occupancy . . . of the Premises." *Id.* As such, it bars Mr. Baha's claim for unpaid rent under the 27-Lease.

The Release provides no qualifications or exceptions that would suggest that claims arising from the 27-Lease were to be excluded from its scope. By its plain terms, the Release is a general release that bars any claims predicated upon events occurring prior to the date of the Release. *See Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1373 (Fed. Cir. 1999) ("The rule for releases is that absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release." (citation omitted)). If a party who executes such a general release has knowledge of facts sufficient to constitute a claim at the time of executing the general release and wishes to make an exception for such a claim, that party bears the burden of manifesting his intent to do so with an "explicit reservation." *Id.* (citation omitted); *see also Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1393-94 (Fed. Cir. 1987) ("Since the information regarding any unresolved claims against the government lies with the contractor, common sense indicates that placing the burden on

9

the contractor to identify and specify such claims clearly in the release is proper."). Mr. Baha does not dispute that he knew of the facts giving rise to his 27-Lease claim before signing the 32-Lease. Mr. Baha therefore bore the burden of reserving his claim to past-due rents under the 27-Lease by creating an exception. *See id.* But the Release provides no such exception for claims arising from the 27-Lease or for claims related to any rent obligations. In fact, Mr. Baha recognizes that the Release, as written, encompasses the government's "rent liability under the 27-Lease." Pl.'s Mot. at 10.

Mr. Baha nevertheless argues that the Release should not be read according to its plain meaning, for two (somewhat overlapping) reasons. First, he asserts that "[s]uch a broad reading of [Release] is contrary to equity and good conscience"; in other words, that the Release is "unconscionable." Pl.'s Mot. at 10-11. To demonstrate that the Release is unconscionable, Mr. Baha must show that "no man in his senses, not under a delusion, would" agree to the terms of the Release. *TPL, Inc. v. United States*, 118 Fed. Cl. 434, 444 (2014) (quoting *Fraass Surgical Mfg. Co. v. United States*, 571 F.2d 34, 40 (Ct. Cl. 1978)). Where a court finds a contract provision unconscionable, it may deny enforcement of that provision. *Id.* However, "[t]he grant of discretion to deny enforcement to an unconscionable clause . . . is not intended to permit courts to redistribute risks allocated by differences in bargaining power, but rather to prevent oppression and unfair surprise." *Id.* at 444-45 (quoting *Fraass*, 571 F.2d at 40).

Contrary to Mr. Baha's arguments, *see* Pl.'s Mot. at 10-11, the facts that the United States Army authored the Release at a time when it knew that it had not paid rent to Mr. Baha under the 27-Lease and that Mr. Baha is not a sophisticated contractor are

not sufficient to show that the Release is "unconscionable."  Mr. Baha had knowledge of the facts giving rise to his claim for unpaid rent under the 27-Lease when he entered into the 32-Lease and therefore has not shown that the Release terms could have "unfair[ly] surprise[d]" him. *TPL,* 118 Fed. Cl. at 445 (quoting *Fraass*, 571 F.2d at 40). In addition, any disparity in bargaining power between the government and Mr. Baha is insufficient to demonstrate that the Release is unconscionable. *Id.* at 444-45; *City of Gettysburg v. United States*, 64 Fed. Cl. 429, 452 (2005) (holding that disparity in bargaining power alone is insufficient to give rise to an unconscionable adhesion contract). Finally, Mr. Baha fails to provide any evidence to show that it was "delusion[al]" or "oppresi[ve]" to agree to the terms of the Release. *TPL,* 118 Fed. Cl. at 444-45 (quoting *Fraas*, 571 F.2d at 40). To the contrary, as the government argues, the more than two-fold increase in the rent offered by the United States Army under the 32-Lease was ample consideration for the Release. Def.'s Cross-Mot. at 19. Mr. Baha has therefore failed to demonstrate that the Release is unconscionable or to create a triable dispute of material fact on this issue.

For similar reasons, Mr. Baha's remaining argument that equitable estoppel precludes the government from relying on the Release is also without merit. *See* Pl.'s Mot. at 10-11. Mr. Baha contends that, because the government knew that rent was owed under the 27-Lease, the inclusion of the Release in the 32-Lease is evidence of "manifest fraud" and "unconscionable conduct." *Id.* The government responds that equitable estoppel requires a showing of affirmative misconduct by the government and that Mr. Baha has not presented any facts to support his claim. Def.'s Cross-Mot. at 19. The court agrees with the government.

In order to avoid application of the Release, Mr. Baha needed to present, in addition to satisfying the traditional elements of equitable estoppel,[2] evidence of "affirmative misconduct" by the government. *Lua v. United States*, 843 F.3d 950, 956 (Fed. Cir. 2016) (citing *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000)). Mr. Baha has failed to do so.[3] As discussed above, Mr. Baha had knowledge of the facts giving rise to his claim for rent under the 27-Lease when he entered into the 32-Lease, and therefore has not made a showing that the government affirmatively misled him regarding the application of the Release to that claim. Aside from bare allegations of "manifest fraud" and "unconscionable conduct," Pl.'s Mot. at 10, Mr. Baha has not presented any evidence that the United States Army misrepresented any material facts to him or acted to deceive him in connection with the 32-Lease, and his conclusory statements are insufficient to overcome a grant of summary judgment. *See, e.g.*, *Moore USA, Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) ("A party may not overcome a grant of summary judgment by merely offering conclusory statements.").

---

[2] The elements of equitable estoppel are: "(1) misleading conduct, which may include not only statements and actions but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted." *Mabus v. Gen. Dynamics C4 Sys., Inc.*, 633 F.3d 1356, 1359 (Fed. Cir. 2011) (citation omitted).

[3] Mr. Baha cites *In re Adler, Coleman Clearing Corp.*, 277 B.R. 520 (Bankr. S.D.N.Y. 2002) in support of his argument that the government engaged in "[i]nequitable conduct." Pl.'s Mot. at 10-11. However, this case did not involve the equitable estoppel doctrine, but rather the equitable subordination doctrine, which is particular to bankruptcy proceedings and is not applicable here. Mr. Baha also cites *In re Varat Enterprises, Inc.*, 81 F.3d 1310 (4th Cir. 1996), another bankruptcy case, in support of his equitable estoppel argument. Pl.'s Mot. at 10. This case is also not relevant because the United States was not a party to the case, and therefore, the Fourth Circuit did not require a showing of affirmative misconduct by the government.

Without any evidence of affirmative misconduct by the government, Mr. Baha has failed to demonstrate equitable estoppel should apply here, *see Lua*, 843 F.3d at 956, and Mr. Baha remains bound by the unambiguous terms of the Release in the 32-Lease.[4]

### B. Mr. Baha's Alternative Theory Of A Quasi-Contract Fails For Lack of Jurisdiction

Mr. Baha argues in the alternative that, regardless of the Release, the United States Army occupied the subject property without paying rent, thus establishing a quasi-contract. Pl.'s Opp. & Reply at 3-4. The government responds that a quasi-contract is an implied-in-law contract over which this court lacks jurisdiction. Def.'s Reply at 6-7 (citing *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1316 (Fed. Cir. 2011) (noting that quasi-contracts are implied-in-law contracts and that the Tucker Act does not waive sovereign immunity over implied-in-law contracts)).

The government is correct. To the extent Mr. Baha contends that there is a controlling implied-in-law contract, this court lacks jurisdiction over such a claim. *See, e.g.*, *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996) ("We have repeatedly held that [Tucker Act] jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law."). Therefore, the court finds that it lacks jurisdiction over Mr. Baha's claim based on an implied-in-law contract.

---

[4] Mr. Baha's argument that the equitable estoppel doctrine applies because "Congress already appropriated funds for the War in Afghanistan and Iraq" likewise fails. Pl.'s Opp. & Reply at 2. Regardless of whether Congress has appropriated these funds, Mr. Baha has not shown any affirmative government misconduct that would permit the court to apply equitable estoppel here.

### C. Mr. Baha's 32-Lease Claim Is Stayed

In its cross-motion and reply brief, the government does not dispute that, assuming the 32-Lease is valid, Mr. Baha is due some of the unpaid "rent that he demands in his claims under the 32-Lease." Def.'s Reply at 7-8. The government argues, however, that the unpaid rent claimed by Mr. Baha is owed to the entire Baha Family because the 32-Lease is a contract between *all* of the heirs of Mr. Bawoddin, who were represented by Mr. Baha, and the United States Army. *See* Def.'s Cross-Mot. at 25-26. The government therefore moves for the Baha Family members to be joined as necessary parties under RCFC 19(a) or, in the alternative, for the case to be dismissed or stayed to allow any of the other Baha Family members to join the suit within the applicable statute of limitations. *Id.* at 26-28, 34-35.

Mr. Baha argues that because the Baha Family authorized him to act on their behalf the government is shielded from liability regarding any claim brought by other Baha Family members. Pl.'s Mot. at 7. In addition, he argues that the Baha Family members, by failing to intervene, "are agreeing to allow [Mr.] Baha to alter their legal relationship with the Defendant." *Id.* at 8. Finally, he argues that Article 23 of the 32-Lease effectively indemnifies the government from any action concerning the property by the Baha Family because it indicates that Mr. Baha, as the "Agent," will represent the "Lessor" (the Baha Family) in any matters concerning the property.[5] *Id.* at 9. Therefore,

---

[5] Article 23 states: "In exchange for Lessee allowing Lessor's Agent or Attorney in Fact, hereinafter 'Agent,' to act on behalf of Lessor and other good and valuable consideration, Lessor and Agent agree to hold Lessee harmless in any claim or dispute between Lessor and Agent, involving the relationship between Lessor and Agent, or regarding any action taken by Agent

Mr. Baha argues, he alone is the proper person to resolve the Baha Family's claims arising from the United States Army's alleged failure to pay rent under the 32-Lease. *Id.* The government contends that until the other members of the Baha Family either join this case or allow their claims to expire on December 13, 2019, the government faces potentially separate and competing claims from Mr. Baha and the other Baha Family members regarding the rent owed under the 32-Lease. Def.'s Cross-Mot. at 28-35.

Although this case has had a long and protracted history, the court finds that a stay of Mr. Baha's 32-Lease claim for a few months is appropriate. *See Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (noting that courts have "broad discretion to manage their dockets, including the power to grant a stay of proceedings"). The court therefore grants the government's request for a stay of Mr. Baha's claim arising under the 32-Lease until December 13, 2019.

## CONCLUSION

For these reasons, the government's motion for partial summary judgment is **GRANTED-IN-PART** and the plaintiff's motion for summary judgment is **DENIED-IN-PART** with regard to Mr. Baha's 27-Lease claim. Any claims arising under the 32-Lease are **STAYED** until December 13, 2019. The parties are directed to file a joint

---

pursuant to the agreement that allows Agent to represent Lessor in matters concerning the property . . . . Furthermore, Lessor and Agent agree that the sole recourse for any such claim or dispute shall be with and between the Lessor and Agent." Def.'s App. at 22.

15

status report by **December 16, 2019** with a proposed schedule governing future proceedings in this case.

**IT IS SO ORDERED.**

s/Nancy B. Firestone<br>
NANCY B. FIRESTONE<br>
Senior Judge