# In the United States Court of Federal Claims

No. 14-494C
(Filed: December 21, 2020)
**NOT FOR PUBLICATION**

| | |
|---|---|
| MUHAMMAD TARIQ BAHA, | ) |
| Plaintiff, | ) Equal Access to Justice Act; 28 U.S.C. |
| v. | ) § 2412(d); Substantially Justified |
| THE UNITED STATES, | ) |
| Defendant. | ) |

**ORDER DENYING MOTION FOR ATTORNEY'S FEES**

Now pending before the court in this breach of contract case is plaintiff Muhammad Tariq Baha's motion for attorney's fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). Under EAJA, a prevailing party may be entitled to attorney's fees and expenses where the position of the United States was not "substantially justified" and no special circumstances are present which would make such an award unjust. *Id.* Because the position of the United States here was substantially justified, Mr. Baha's motion is **DENIED**.

**I.  BACKGROUND**

On August 10, 2002, the United States Army entered into lease No. SWD-OEF-0027 (27-Lease) to rent a residential property in Kabul, Afghanistan. *Baha v. United States*, No. 14-494C, 2020 WL 3045955, at *1 (Fed. Cl. June 4, 2020). The 27-Lease (as represented by a lease supplement) was between the Army and Ghiuam Bawoddin, acting

by and through his son Mr. Baha, and it was signed by Mr. Baha. *Id.* However, Ghiuam Bawoddin had been dead for many years. *Id.* Shortly after the 27-Lease supplement was signed, a 2002 power of attorney document was executed by Ghiuam Bawoddin's heirs (collectively, the Heirs), authorizing Mr. Baha to act on their behalf to make decisions about the property. *Id.*

Due to a title dispute with a third party over the house, rental payments were not made under the 27-Lease. *Id.* In 2009, the Afghanistan Supreme Court identified Mr. Baha and the Heirs as the rightful owners of the property. *Id.*

On August 8, 2011, the heirs of Mr. Bawoddin, represented by Mr. Baha, and the United States Army entered into lease No. DACA-TAN-5-11-0032 (32-Lease) for the Army to rent the property. *Id.* The 32-Lease contained a release clause which released the United States from all claims "arising from the occupancy, use, and alteration" of the property. *Id.* (citation omitted). The 32-Lease was signed by Mr. Baha on behalf of the "heirs of [Mr. Bawoddin]." *Id.* The 32-Lease represented that Mr. Baha was the agent for the Heirs and contained a release and indemnification clause for any disputes between the agent and the principal (the Heirs) regarding the rent. *See id.*

The United States paid rent upon the signing of the 32-Lease in 2011 but ceased making additional payments due to doubts raised about the legal effect of the 2002 power of attorney allowing Mr. Baha to rent the house on behalf of the Heirs. *See* Joint Status Report at 3-4, ECF No. 101 (citing Pl.'s Mot. Summ. J., Ex. D, ECF No. 87-5). Before paying rent in September 2012, the Army requested that Mr. Baha provide a new power of attorney or, in the alternative, a lease signed by all the Heirs. Joint Status Report at 4-

5. Neither document was provided, and the Army did not pay rent and eventually relinquished the property in 2014. *Id.*

In 2014, Mr. Baha sued the United States under the Contract Disputes Act (CDA) for unpaid rent under both the 27-Lease and the 32-Lease. *See Baha v. United States*, 144 Fed. Cl. 500, 502 (2019). The government filed a motion to dismiss Mr. Baha's complaint for lack of jurisdiction because he had not submitted a certified claim as required by the CDA. *See* Def.'s Mot. to Dismiss at 5-6, ECF No. 9. The court ordered Mr. Baha to amend his complaint to comport with the requirements of the CDA. *See* Order at 1-2, ECF No. 13.

After Mr. Baha amended his complaint, the government filed another motion seeking dismissal, or, in the alternative, that the court provide notice of the lawsuit to the Heirs. *See* Def.'s Mot. to Dismiss at 1, ECF No. 17. The government explained that it could be subject to multiple claims for the same payment because Mr. Baha had sued the government separately from the Heirs and claimed entitlement to the entire outstanding rent. *Id.* at 12-13. The court denied the motion to dismiss but ordered that the Heirs be notified of Mr. Baha's lawsuit because they "may have an interest in the outcome of this litigation" separate from Mr. Baha. *Baha v. United States*, 123 Fed. Cl. 1, 3, 6-7 & n.6. The Heirs filed a separate complaint in this court for unpaid rent. *See* Order at 4, ECF No. 79 (citing Compl., No. 15-1349C, ECF No. 1).

The court consolidated Mr. Baha's and the Heirs' cases, but then stayed them when the government became aware of a separate lawsuit in California state court between the Heirs and Mr. Baha regarding the property. *See* Order, ECF No. 35. The

court lifted the stay after the California state court case was dismissed without a decision. Order, ECF No. 42.  The government then sought to dismiss both complaints because neither Mr. Baha nor the Heirs had comported with the requirements of the CDA.  *See* Def.'s Resp. at 1, ECF No. 75.  Specifically, the government argued that Mr. Baha had not certified his claim to the contracting officer and that the Heirs had not submitted a claim to the contracting officer at all.  *Id.*  Recognizing that the Heirs were making a separate claim from Mr. Baha and that Mr. Baha "only claimed unpaid rent and damages for himself," the court dismissed the Heirs' claim, noting that they could submit a CDA claim to the contracting officer.  Order at 9-10, ECF No. 79.  The court also remanded Mr. Baha's claim, ordering Mr. Baha to correct his "defective" CDA certification.  *Id.* at 8-10.

Mr. Baha then re-submitted his CDA claim with the proper certification, and the Heirs submitted a certified claim to the Army for unpaid rent.  *See* Def.'s Cross-Mot. Summ. J., App. at 45-57, ECF No. 90-1.  In December 2018, the contracting officer denied both claims.  *Id.* at 58-67.

Mr. Baha immediately challenged the denial of his claim in this court, but the Heirs did not.  Summary judgment briefing followed.  In an order granting partial summary judgment for the government, the court held that the release clause in the 32-Lease released the United States from the unpaid rent obligations under the 27-Lease. *Baha*, 144 Fed. Cl. at 504-06.  Recognizing that the Heirs still had a possible interest in the property, the court granted the government's motion to stay Mr. Baha's claim for rent under the 32-Lease until the Heirs' CDA claim became final and non-appealable.  *Id.* at

507. The Heirs neither joined Mr. Baha's suit nor filed their own, and the contracting officer's denial of their claim became final in December 2019.

The court then ordered additional briefing on the 32-Lease claims, and held, based on the 2002 power of attorney document, that the Army was liable to Mr. Baha under the 32-Lease for $180,000 in unpaid rent. *Baha*, 2020 WL 3045955, at *4. The court reasoned that Mr. Baha's representation with regard to the Heirs was effective under the 2002 power of attorney because the Heirs did not appear or otherwise object to Mr. Baha's claim and, after translation of the 2002 power of attorney, the government had conceded the point. *Id.* at *3-4 & n.2. Judgment was entered on June 17, 2020, granting Mr. Baha relief under the 32-Lease only. ECF No. 123. Mr. Baha's motion for reconsideration regarding the 27-Lease claim was denied on September 4, 2020. *Baha v. United States*, No. 14-494C, 2020 WL 5289378, at *1 (Fed. Cl.).

Mr. Baha now moves for attorney's fees and expert and consultant fees under EAJA. Mr. Baha argues that he is a "prevailing party" as defined by EAJA and that he has met all of the other prerequisites for an EAJA award. Mot. at 1-5, 7-9, ECF No. 131. Mr. Baha further contends that the government's position in this case was not "substantially justified" because under the 2002 power of attorney, agency law, and the terms of the 32-Lease, it was clear that Mr. Baha represented the Heirs and that the government's argument regarding conflicting claims from the Heirs had "no basis in law or fact." *Id.* at 6-7.

The government responds that Mr. Baha's motion fails for six reasons.[1]  First, the government argues that Mr. Baha has failed to provide a fee agreement as required by EAJA.  Resp. at 8-9, ECF No. 135.  Second, the government contends that Mr. Baha has failed to submit the required contemporaneous itemized statements.  *Id.* at 9-10.  Third, the government argues that Mr. Baha is a prevailing party as to the 32-Lease only, and that Mr. Baha's motion fails to distinguish attorney's fees incurred for claims under the 32-Lease as opposed to the 27-Lease.  *Id.* at 10-12.  Fourth, the government argues that its position regarding the 32-Lease claim was "substantially justified."  *Id.* at 12-24.  Fifth, Mr. Baha, according to the government, may not recover his requested expert or consultant fees under EAJA.  *Id.* at 24-27.  Finally, the government contends that Mr. Baha's EAJA application must be denied because his requested fees are unrecoverable or unreasonable, as Mr. Baha inappropriately block-billed and included fees incurred on the unsuccessful 27-Lease claim.  *Id.* at 27-30.

Mr. Baha replies that he is not required to submit a fee agreement with counsel or a contemporaneous itemized statement.  Reply at 3-5, ECF No. 136.  He reiterates that the government's position in this case was not substantially justified because under the terms of the 32-Lease and agency law, Mr. Baha was able to represent the Heirs and

---

[1] The government also argues that Mr. Baha's fee application is premature because the fee application was filed before the court's judgment became final on November 3, 2020.  Resp. at 7-8.  Under EAJA, applications for attorney's fees must be filed within 30 days of a final, non-appealable judgment.  28 U.S.C. § 2412(d)(1)(B).  Applications for EAJA fees have been considered by this court to be premature when they are filed prior to a final judgment.  *See Heger v. United States*, 114 Fed. Cl. 204, 208 (2014).  However, courts have also "deemed premature EAJA applications to have been subsequently filed during the appropriate thirty-day period," rather than dismiss them.  *Id.*  Because the court's June 17, 2020 judgment is now final, the court deems Mr. Baha's EAJA motion to have been timely filed.

collect rent under the 32-Lease. *Id.* at 5-6. Mr. Baha contends that he is entitled to expert fees under EAJA, and that the documentation submitted justifies the claimed attorney's and expert fees. *Id.* at 6-10. Mr. Baha did not submit with his reply any additional billing documents.

## II. LEGAL STANDARD

EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The essential objective of the EAJA is to ensure that persons will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in the vindication of their rights." *Kelly v. Nicholson*, 463 F.3d 1349, 1353 (Fed. Cir. 2006) (alterations and quotations omitted).

To obtain an award pursuant to EAJA, a party must satisfy five requirements: (1) the fee application must be submitted within 30 days of a final judgment and be supported by an itemized statement; (2) at the time the civil action was initiated, the applicant must not have been valued at more than a certain net worth threshold; (3) the applicant must have been the "prevailing party" in a civil action brought by or against the United States; (4) the government's position must not have been "substantially justified;" and (5) there cannot exist any special circumstances that would make an award unjust. *WHR Grp., Inc. v. United States*, 121 Fed. Cl. 673, 676 (2015) (citing 28 U.S.C. §

2412(d)(1)(A)-(B)). The party seeking fees bears the burden of satisfying the first three requirements. *See* 28 U.S.C. § 2412(d)(1)(B). The burden then shifts to the government to show its position was "substantially justified" or that special circumstances make an award unjust. *Athey v. United States*, 149 Fed. Cl. 497, 511 (2020) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 100 Fed. Cl. 750, 759 (2011); *Helfer v. West*, 174 F.3d 1332, 1336 (Fed. Cir. 1999)).

## III. DISCUSSION

Applying these standards to this case, the government alleges multiple defects in Mr. Baha's EAJA's application. However, regardless of these alleged defects,[2] EAJA does not provide for attorney's fees and expenses, even to prevailing parties, if "the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Here, the United States has demonstrated that its position was substantially justified, and Mr. Baha's motion must be denied.

The "position" of the United States "refers to the government's position throughout the dispute, including not only its litigating position but also the agency's

---

[2] The court agrees with the government that Mr. Baha failed to submit the required contemporaneous itemized statements. Resp. at 9-10. The Federal Circuit has held that a party seeking fees and expenses under EAJA must submit contemporaneous records to support the fees the party seeks to recover. *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987) (requiring "contemporaneous records of exact time spent on the case, by whom, their status and usual billing rates"). Mr. Baha has submitted an undated invoice representing years of work beginning in 2014. Mot., Ex. 3. This is not sufficient. *Prowest Diversified, Inc. v. United States*, 40 Fed. Cl. 879, 885-86 (1998); *Athey*, 149 Fed. Cl. at 513. Although the court could in its discretion allow Mr. Baha to supplement his submissions, *Athey*, 149 Fed. Cl. at 513, the court declines to do so, given the court's determination that the position of the United States was substantially justified. The court also does not reach the government's other arguments for this reason. *See id.* at 514.

administrative position." *Athey*, 149 Fed. Cl. at 511 (quoting *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995)); *see also Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011) ("The 'position' of the government includes actions taken at the agency level as well as arguments made during litigation."). Courts are "to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991); *see also Comm'r v. Jean*, 496 U.S. 154, 161-62 (1990) (stating that EAJA "favors treating a case as an inclusive whole, rather than as atomized line-items"). The court has "considerable discretion" in determining whether the government's position was substantially justified. *Stromness MPO, LLC v. United States*, 140 Fed. Cl. 415, 441 (2018) (quotation omitted).

Whether the position of the United States was "substantially justified" is not determined solely by who won and lost on the merits. *See Pierce v. Underwood*, 487 U.S. 552, 569 (1988) ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."); *Patrick*, 668 F.3d at 1330 (holding that a "reasonable, albeit incorrect" position may be substantially justified). Moreover, the government's willingness to settle or concede issues does not establish that its position lacked substantial justification. *See Pierce*, 487 U.S. at 568 (holding that a "willingness to settle" cannot "conclusively establish the weakness of the Government's position"). As explained by the Federal Circuit, "[t]o be substantially justified, the government's position need not be 'correct,' or even 'justified to a high degree.'" *Norris v. SEC*, 695

F.3d 1261, 1265 (Fed. Cir. 2012) (quoting *Pierce*, 487 U.S. at 565, 566 n.2).  Rather, the government's position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person" and "has a reasonable basis both in law and fact." *Pierce*, 487 U.S. at 565; *Patrick*, 668 F.3d at 1330.  Attorney's fees under EAJA are therefore generally awarded only where the government offered "no plausible defense, explanation, or substantiation for its action." *Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 6-7 (1990); *see also Athey*, 149 Fed. Cl. at 511.  In a case involving multiple issues or phases, "a string of losses can be indicative" of whether the government's position was substantially justified, "and even more so a string of successes." *Athey*, 149 Fed. Cl. at 513 (quoting *Pierce*, 487 U.S. at 569).

In this case, Mr. Baha argues that the position of the United States was not substantially justified because it was clear from the 2002 power of attorney document, principles of agency law, and the terms of the 32-Lease that Mr. Baha was entitled to collect all of the rent due to himself and the Heirs under the 32-Lease. Mot. at 6-7. Mr. Baha contends that the government "was aware of the power of attorney before litigation started." *Id.* at 6. Mr. Baha further contends that principles of agency law protected the government from any liability to the Heirs because of Mr. Baha's "actual or apparent authority" as an agent of the Heirs. *Id.* at 6-7. Mr. Baha also argues the terms of the 32-Lease made clear that the government was protected from any disputes between Mr. Baha and the Heirs regarding the rent. *Id.* at 7. For these reasons, Mr. Baha asserts, the government's position regarding the Heirs' conflicting claims "was not substantially justified because neither the facts nor the law supported it." *Id.*

The court disagrees. The government's position overall—both before and during the course of the litigation—was substantially justified, given the doubts about Mr. Baha's authority to make decisions and collect rent on behalf of the Heirs under the 32-Lease. Mr. Baha is correct that the government, before this case began, had a copy of the 2002 power of attorney authorizing Mr. Baha to represent the Heirs in regard to the property. Resp. at 15. However, the government also became aware in 2012 that the Heirs were not receiving the rental proceeds from the 32-Lease. *See* Joint Status Report, Attach. B, ECF No. 101-2 (communications between the Army and Mr. Baha requesting an official power of attorney). Moreover, at that time, Mr. Baha stated he was the sole owner of the property. *Id.*

Given these developments, it was reasonable for the government to be concerned about Mr. Baha's authority to represent the Heirs and the validity of the 32-Lease, regardless of the existence of the 2002 power of attorney. The government accordingly sought an updated power of attorney or a lease signed by all of the Heirs. *Id.* This approach is consistent with agency law, as the government's ability to rely on Mr. Baha's authority to represent the Heirs was constrained when the government had reason to know that Mr. Baha may not have been acting with actual authority. *See United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1334 (Fed. Cir. 2013) (citing Restatement (Third) of Agency § 6.11 cmt. b (2006)). In addition, the terms of the 32-Lease would not "unequivocal[ly]" protect the government from liability to the Heirs, as Mr. Baha argues, Mot. at 7, if the 32-Lease was not valid.

Mr. Baha's conduct during the litigation also demonstrates that the government's position was substantially justified. During the majority of the litigation of this case, Mr. Baha's position was that Mr. Baha did not represent the interests of the Heirs with regard to the 32-Lease and was proceeding on behalf of himself. *See* Pl.'s Mot. Summ. J. at 8, ECF No. 87 ("In this case, the Baha-Family are aware that Baha is prosecuting this action under his own name and is seeking any relief solely for his own benefit."); Def.'s Cross-Mot. Summ. J., App. at 55-56, ECF No. 90-1 (Mr. Baha's certified claim contending that he alone entered into the leases); *id.* at 50-54 (Heirs' certified claim contending that they did not provide Mr. Baha with a power of attorney to prosecute the action on their behalf). The court recognized this position multiple times, as well as the possible conflicting interests of Mr. Baha and the Heirs. *See, e.g.*, *Baha*, 2020 WL 3045955, at *3 n.2 ("The court recognizes that, at an earlier stage of this case, the court held that Mr. Baha did not provide documentation indicating that he was bringing this suit on the heirs' behalf."); *Baha*, 123 Fed. Cl. at 6 n.6; *Baha*, 144 Fed. Cl. at 507 (staying Mr. Baha's 32-Lease claim so that the Heirs could join or if not to allow their claim to expire). It was not until the Heirs' CDA claim expired that Mr. Baha made clear, in supplemental summary judgment briefing, that he was representing the interest of the Heirs.[3] *See Baha*, 2020 WL 3045955, at *3 n.2; *id.* at *3 (noting in the decision on the supplemental summary judgment briefing that "Mr. Baha has now stated that he is proceeding as the agent of the heirs"); Pl.'s Supp. Br. at 2, ECF No. 107. Once the Heirs' claims were

---

[3] Mr. Baha did not address this change in his litigating position in either his motion for attorney's fees or his reply.

12

extinguished, Mr. Baha claimed to represent the Heirs, and the authority granted by the 2002 power of attorney document was verified, the government conceded that recovery for unpaid rent under the 32-Lease could proceed. *Baha*, 2020 WL 3045955, at *3. Given the ongoing doubts about Mr. Baha's authority and whose interest he represented, the court finds that the government's position throughout the course of this litigation had a "reasonable basis both in law and fact." *Pierce*, 487 U.S. at 565.

The government's "string of successes" in this case further establishes that the government's position was substantially justified. *Id.* at 569. The government prevailed on the 27-Lease claim. And although the court ruled against the government on the merits of the 32-Lease claim, the government prevailed on almost all of the other issues it raised, including the need for the Heirs to be notified, whether Mr. Baha's CDA claim was properly certified, and whether the government should be protected from the potential conflicting claims of the Heirs. *See infra* Part I. These multiple favorable decisions indicate that the government's overall position was "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. The fact that the government ultimately lost on the merits of the 32-Lease does not alone render its position substantially unjustified. *Id.* at 568-69; *Norris*, 695 F.3d at 1265.

For all of these reasons, the court agrees with the government that its position was substantially justified. Mr. Baha is therefore not entitled to an award of fees and expenses under EAJA.

## III. CONCLUSION

Based on the foregoing, Mr. Baha's motion for attorney's fees and expenses, ECF No. 131, is **DENIED.**

**IT IS SO ORDERED.**

<u>s/Nancy B. Firestone</u>
NANCY B. FIRESTONE
Senior Judge
